May it please the Court, this is Kevin Grohl appearing on behalf of the Appellants Cross Appellees, the Union and Dr. Edwin Savloff. If possible I'd like to leave a couple minutes for rebuttal and unless the court prefers another approach I will address the matters that we raised in our initial appeal and then go to the matters that were raised in the government's brief. At issue in 041-16607 is whether the VA can properly bar Dr. Savloff's grievances concerning professional conduct or competence within the meaning of 38 U.S. Code 7422b-1. Consistent with the rules for statutory interpretation in Chevron, the first inquiry is whether Congress has unambiguously addressed the precise issue in question. In this regard, it bears noting that Congress narrowly defined professional conduct or competence to mean direct patient care or clinical competence. By these adjectives, the Appellants submit that Congress intended the professional conduct or competence exclusion to be a narrowly applicable exclusion dealing with legitimate patient care considerations. And we also discussed some legislative history in support of that. Here, the grievance being pursued by the Appellants alleges unlawful discrimination or the absence of any legitimate health care consideration in the Medical Center Reno's decision to remove surgical duties from Dr. Savloff and to reduce his specialty pay. If Appellants were to prevail in any arbitration, the arbitrator would find that the decision to remove surgical duties and specialty pay from Dr. Savloff was the result of unlawful discrimination. If the arbitrator finds that the decision to remove surgical duties from Dr. Savloff and to reduce his pay was not the result of unlawful discrimination, the arbitrator will simply deny the grievance without opining on the medical care soundness or lack of medical care soundness in the VA's decision. Sotomayor, Aren't those intertwined necessarily, though? Let's assume a case in which someone says, I was fired because I'm Asian. And the response is, no, you were fired because you're a terrible surgeon, and you killed three patients, and your patient care is terrible. To decide which of those two things is true, don't you have to look at the patient care issues to determine if they are pretextual or legitimate? You obviously have to look at them to see if they're pretextual, but you're not inquiring into what is medically correct or incorrect. But don't you have to to determine whether that's a legitimate? I mean, my example, it's obvious you're not supposed to kill patients, but the issue could be more subtle than that. Wouldn't it necessarily require some determination about whether, in fact, the patient care was adequate? Because if it was inadequate, then it's, you know, then it's a different outcome than if it was, in fact, adequate. So to determine whether it's pretextual, you might have to determine that it was adequate medical care, patient care. Well, I think what we're focusing on, though, is the hospital's reasons. And in that sense, I think what we would be looking at is the credibility of the hospital's assertions. And insofar as the hospital may have medical argument in support of that, then I would agree. But insofar as the medical hospital's decision doesn't stand up to credibility reasons, I would respectfully say that that would be a separate issue. And, again, I think the difference is there that in any discrimination case, the burden would be on the employer, in this case the union, to show that these reasons were truly pretextual. Again, I think we would submit there's a difference between credibility and actual medical soundness. And I think that's what we're going to. And in this regard, and I think the government would concede this point, that had Dr. Savloff pursued an administrative EEO complaint, an EEOC administrative judge would have had to make the same call. Had Dr. Savloff gone into U.S. Could he have? Could he have gone after an EEOC thing? Yes, he could have. He could have. Yes. The master agreement doesn't prohibit the prohibit? No, it does not. In fact, it could not by law. First of all, it's an individual right, plus Section 7121D of Title V. Okay. Gives a choice. Yes. And if he had done that, we wouldn't be here today. That is true. But he opted in consultation to the union to take the union route. We would submit that there are certain advantages to that, paying an attorney, the informality. And I hasten to say this, although it certainly didn't prove, in this case, the speed of normal arbitration. This is not a poster child for that. But in most cases, that would be a consideration. All right. Is the union ever going to recommend against EEOC ever from here on out? Well. Recognizing that even if you win the arbitration, the VA can come along and say, hey, we've decided that this is a matter which involves patient care, and therefore, you're out. Well, you've raised an interesting question. There is one case on this. It's now before the D.C. Circuit where what happened was the VA undersecretary made a ruling after an award was final and binding. And that case has now gone to the D.C. Circuit. And that briefing starts next month. But isn't that the present view of the VA? They can do whatever they want. Well, that is the present view of the VA. That is certainly not our view. And that's why we're here. I understand that. And that's certainly why we're here and why we're in the D.C. Circuit. Okay. Go ahead. Again, we would submit, picking up on the discussion with Judge Graber, that the application of the professional conduct or competence exclusion turns 7422 inside out, because what it does is allows for insulation of a decision not based on legitimate health care needs to be barred from the grievance procedure without any factual health care consideration was present. And we submit that the purpose of the exclusion is to insulate legitimate patient care considerations and not to render decisions unreviewable, even if those decisions are not based on any patient care consideration whatsoever. In fact, in this case, what the VA paper, which is in the excerpts of record, indicates is that basically the defendants rely upon unproven factual defenses of the hospital without, again, being tested to the level of adjudication. And, again, another problem with the VA's approach in this case is that the VA undersecretary has basically decided for himself to be the de facto adjudicator. Sotomayor, what kind of cases are not arbitrable that are the do have to do with qualifications? I'm sorry, what cases? What kinds of cases do have to do with qualifications then, if this one doesn't? Well, I think if this were a case where I think if this were a case where a doctor had not been certified, for example, and Dr. Savlov had been certified, what happens if he had lost his certification? I think we would have a different I think we would have a different example for various procedures. And, again, what the issue is here is not necessarily what Dr. Savlov was qualified to do, but here the issue is whether the decision of the VA was based on considerations totally apart. When you say qualified, what do you mean? Because that's what the VA says, well, this is a question of whether or not he's qualified. Was he able to do this kind of work? But, again, the context of here is that what the VA has done is they have essentially barred the grievance from processing. The grievance says he was not qualified or that it was not an issue of patient care, it was an issue of something else. In this case, unlawful discrimination. From that perspective, what we are saying is the inquiry goes not to whether he was qualified or not per se, but whether or not the hospital used proper medical care considerations as opposed to unlawful discrimination. So, in that context, the issue is not his competencies. The issue is the VA's motive in taking away the things they had already found. We have some doubts about your competency. We think you ought to go get recertified. And you say, oh, they're just doing that because of my age. What? We would say that's grievable. But the certification would then be. But it's a question of what the hospital said is you need to be recertified. So, therefore, I don't see that the certification question helps you very much. But our point is here, what is being grieved or the subject of the grievance, the subject of the matter being submitted to the arbitrator for resolution is the VA's motives, which we think is a distinct question from a bald assertion of certification. So if the answer, let me just track this through. If the VA's answer is, here are the records showing that every person who has worked for 10 years has to be recertified no matter what their age, your grievance would be denied, and it wouldn't matter whether that was a stupid requirement or not. Yes, I would agree with that. Okay. But if the records demonstrate that anyone under 60 has never been asked and everybody over 60 is, then, again, it wouldn't matter whether it's, you know, then there's an inference that it's age. But what do you do with an assertion that age correlates with direct patient care competence? What would you do with an assertion like that from the VA? Well, under the Age Discrimination Act, and, again, in 633A, which is the Federal Employment Section, which is unique from the other provisions of the ADA in the private sector, there is, for example, functionally no mandatory retirement, no we would submit that the reason for that is that you have to judge an individual on his or her merit, not merely by chronological age. And so in that sense, if there were a policy that distinguished older persons from younger persons without regard, without regard to their competency, yes, I think that would be fair game. I guess I don't so suppose it turns out that the I'm not quite sure how this follows through. If there's a policy that says you have to be recertified after 10 years regardless of your age, you would say? If everyone across the board. Right. But let's suppose that that hits in this particular hospital only people who happen to be over 50, or almost everyone is over 50, then the fact that that has a discriminatory effect, you say, well, it doesn't matter as long as it's a policy across the board, it's not grievable. Well, look. I guess I'm not following that. Yes. Because I would have thought you would have said that. My first hypothetical, I think I was given the age of 60 rather than 50. Does that change the answer? By 70. You can see we're all sensitive at different points here. But I guess that's sort of my point. If the policy is predicated on a supposition of age as opposed to predicated on a supposition that everyone has to be certified in 10 years, I think the supposition based on age would, in fact, be grievable. Do you really? Yes. Well, I tell you right now, reaction time for a guy over 70 is slowed down. I can appreciate that. And that, I think, would be a big thing in a hospital, in a doctor. We need a driver's license. Sure. I appreciate that. For what it's worth, one of the factual assertions that we would raise provided we get to arbitration is, and this was somewhat alluded to in the record in Dr. Savlov's declaration and in the local president's, former local president's declaration, was the point that historically loss of surgical services at the hospital was a peer review process rather than an administrative fiat where other people were and other peers were, in fact, looking at his or her competencies rather than just what appears to be, in this case, to be a hospital announcement. And again, I could point to another, you know, sort of factual assertions that we would be raising in the grievance. I guess the point that the point where we submit the line should be drawn is quite simply where there is a supposition that age or age alone, and that would be all that would be the issue, and that would be all that we are submitting to the arbitrator. Again, to reiterate the point, but we are the inquiry goes to the agency's motives, not necessarily to a second-guessing of any medical decision. I don't know if the Court wants me to get into the jurisdiction and the cross-appeal of the medical issues. I can say sort of briefly on the jurisdiction issue that the government raises, their reliance on 7422E we submit as misplaced because that is a venue provision going to FLRA decisions involving VA medical professionals. And we think the discussion of the progression of the legislation, as well as other arguments in our brief, addresses that. There was also an issue involving exclusion of, based on compensation, the 7422B3 exclusion. We submit that that only goes to the establishment of compensation rates under Title 38 of the U.S. Code, which goes to establishment of pay scales or pay rates, as opposed to the compensation of an individual grievant. And if the grievant is to receive pay in accordance with the scales that the VA already established, we don't think that runs afoul of 7422B3. I can answer any other questions. Otherwise, I can say for rebuttal. Ginsburg. If there would be any, you may reserve your time for a moment. Addington. Good morning, Your Honors. May it please the Court, my name is Greg Addington. I'm an assistant U.S. attorney for the District of Nevada in Reno. It was my privilege to represent the Department of Veterans Affairs officials before the district court, as well as before this Court. And I'll be referring to them collectively as the VA, just for ease of reference. Kagan. How are you doing that? Addington. Pardon me? Kagan. Are you by appointment, or what happened? Addington. No. The Department of Veterans Affairs officials were sued in their official capacities because of the decisions that they had made. And so the duty to defend them fell to the Department of Justice and to the U.S. Attorney's Office in Nevada. Kagan. Sorry. I thought you said you were with the — I just misheard what you said. You were with the U.S. Attorney's Office. Addington. Yes, Your Honor. Kagan. Okay. I thought you said the Attorney General's Office. Sotomayor. Counsel, let me start by asking you a question about what concerns me about your client's basic position in this case. It seems clear that Congress is trying to separate, in this case, from discrimination so that a person could not be told, I'm sorry, I'm firing you because you are old or female or whatever it may be. At the same time, there is discretion to decide on professional conduct and the standards for professional conduct. My concern is that the person were, in fact, fired or demoted because of a prohibited reason. All the VA has to say is, oh, no, we think it's professional competence, and then no one would have any authority to determine whether that's true or false. Addington. And isn't it true in connection with that also that the Undersecretary for the Health, who's ruling upon the care and the Undersecretary of Health is appointed based on qualifications, presumably, but you're correct that it could be a pig plumber. Sotomayor. Pardon me? Addington. I don't know whether Jonathan B. Perlin, who was the President of the Secretary, or the Secretary's, isn't it James Nicholson? Addington. It is, Your Honor. They've been Mr. Principe was succeeded by Mr. Nicholson, and Dr. Roswell was succeeded. And there's no question about renaming this case, I hope. No. Of course, it can be substituted without effect on the disposition of this appeal. All right. Your Honor. I haven't answered the question. Yes. Well, the question is, in what context, if any, in your view, can that determination be looked at to be found true or false? Because if it's true that professional competence was the concern, then nobody gets to second-guess whether you get three mistakes or eight patient mistakes before something happens to you. But if it's purely just false, made up, then the Secretary should not have the option to do that under what the system that Congress has set up. So in your view, who gets to look at that? The D.C. Circuit Court of Appeals gets to look at that. How? The determination is made by the Undersecretary of Health, and that determination has a consequence. The arbitrator either dismisses the appeal, which we think would be a foregone conclusion at that point, and then the grievant can appeal that to the FLRA, which I think would likewise be a foregone conclusion based on FLRA decisions and precedent, and then the FLRA decision would be subject to appeal to the district to the D.C. Circuit Court of Appeals. But, Counselor, there's no record. There is an administrative record. There's no record at all. No, there's nothing. There's no record at all for the D.C. Circuit to look at. There is the same record that's before this Court, the administrative record that supported the Undersecretary of Health's determination. That would be before the D.C. Circuit Court of Appeals. Nobody has ever had a trial or a hearing or an arbitration concerning whether the reason is true or false. That is correct. Okay. So going back to my question, which is, how is a who gets to have a hearing to decide whether this is a true reason for patient care or whether it's just made up? Who is who where does that hearing take place? And maybe the answer is only the EEOC, but if that's true, I don't know where in the statutes you would, you know, find that as being the only option. The denial of this grievance process does not mean that the discrimination claim can never be heard by anyone. Clearly, there's a forum that's available to discrimination claimants to go through the EEO process that would either proceed through the EEOC itself or to district court after the exhaustion of administrative remedies before the EEOC. But so clearly, that forum is always going to be available. That's going to be available to this particular doctor if we go along with your argument. And you're not going to raise the question of timeliness when he goes to the EEOC. Clearly, we would raise the issue of timeliness, Your Honor, because he — Well, in other words, you got him and — But he affirmatively chose, Your Honor, to not proceed. In fact, he withdrew from the EEOC process. But isn't it true that the Veterans Administration puts out a booklet talking about how wonderful, you know, this whole thing is? You mean the grievance process? Yeah. Aren't you sucking these people in? Not at all, Your Honor. He's — Doesn't a person in any other hospital in the country have a right protected by Congress to — or to, I guess, by Congress, a right to arbitrate this kind of dispute if it happens? Other than Title 38 medical professionals, every other non-postal Federal employee — well, postal employees, too — have a discrimination-based remedy. Age discrimination, sex discrimination, whatever it is, they may proceed through that statutory remedy in the form that's available for those remedies. Dr. Savloff had the same remedy available to him, the same form available to him. And he actually initiated that process. He had the same contract. They can abide by the contract, right? Yes. Or those same non-medical professionals could proceed through the grievance process and through the FLRA process and through the Circuit Court of Appeals review process that's built into Title V. So why should a medical professional join a union? Well, the medical professional — Isn't it true that the government has decided that you're going to stick it to them anyway? No, not at all. If the grievance does not concern patient care, professional conduct or confidence or the other — Everything does. That's just it. Everything does. Something I said had a huge reaction there. Yes, it did, because you said the grievance concerned patient confidence. And that's not what this grievance was. That's the whole point of my initial question. The grievance concerned discrimination. It's your defense that concerns confidence. And would that be a fair way to read this so that it made sense? So that if someone's grievance was your patient care standards are wildly unreasonable, the answer to that is, I'm sorry, that's not grievable. But if the grievance is you fired me because I'm old and you have no legitimate reason to do it, that you can't do King's X by saying, oh, well, it was really confidence and therefore nobody can ever think about it again. The way that — Could that be a reasonable way to look at — to let the grievance — this is like the opposite of what the discussion was in the previous case — to let the grievance govern whether it's a matter of professional confidence. The way the statute is written, it states whether the grievance raises a question or concerns a matter or rises out of these three — Technically, you're reading it. That is, if it ever comes into the picture at all, either by you or by the plaintiff, then it's out — If it touches upon those prohibited areas. It's up to us to interpret as to whether you're right or wrong. Well, our fundamental view, of course, was the district court had no jurisdiction. And so this court — that the district court of appeals in D.C. should be addressing this issue. Well, let's leave aside the where place for now. We — I know you haven't waived that argument. But what the statute said, if — the grievance procedures may not cover or apply to any matter relating to patient care. I mean, I'm paraphrasing. Yes. But somebody has to decide whether the grievance actually does cover or apply to that question. And if the grievance, by its own terms, says, no, I'm not doing that, why isn't that itself arbitrable? First, because the statute says that the VA's determination is not to be reviewed by any other agency. And so the VA's determination is final in terms of the administrative processing. We're not an agency. I understand. And I'm getting there. There is judicial review available of that determination in the D.C. Circuit Court of Appeals. Again, going through that process of the determination is made. It's not reviewable by the FLRA. It's not reviewable by the arbitrator. When the determination is made, that arbitration is still pending. The grievance is still alive. Now, again, it may be a foregone conclusion about how that administrative process is going to continue. Now, I don't understand that. If the question is whether the grievance covers or applies to an issue of professional conduct, and the grievance on its face does not apply to professional conduct. It applies to something else. Then where in this do you see that a defense, then, can prevent arbitration? That's my concern. The grievance says you did something bad to me because I'm old. I don't understand why that doesn't just go to arbitration and that's either true or not true. Because the adjudication of that grievance will require an analysis, an assessment of what the management prerogatives were relative to the decision you agreed. No, it will. With respect to every claim of discrimination. Every grievance. Is that right? Every claim of discrimination becomes, in your view, the un-un-unarbitrable. I believe that that probably is the practical consequence. And you think that's what 38 medical professionals do. And you think that is what Congress had in mind? Yes, I do. Because there is still a remedy available for those discrimination claimants. We're not pre-judging the grievance. We're not denying a proper forum for that discrimination claimant. We're simply saying that that particular claim must proceed in a particular way. Now, let me ask you another question. Let's suppose someone goes to the EEOC and you raise this and they say, I was done something bad happened to me because I'm old or female or whatever. And you say, no, no, it's because you're a lousy doctor, patient care. And then you look at subsection D of the same statute and you say, you know, EEOC, this matter may not be reviewed by any other agency. So the EEOC couldn't look at it either. If we were to follow your line of thought literally. That would not occur for the following reason. The 7422d determination is only made in the context of a grievance, which is then pending, a grievance that is initiated under the collective bargaining agreement process. So if the matter went to an informal complaint and then a formal complaint to the EEOC, that would be in the context in which the VA would be making a 7422d determination. That determination is only made in order to close off the grievance process under the collective bargaining agreement. And so the EEOC would have the discrimination claim before it, and it could make whatever decision it made concerning the merits of that discrimination claim. The 7422d determination of the EEOC is only made in the context of a grievance before they have this, this why is the VA fighting it in this particular case? If he had chosen a different remedy, how will it be fine, you're telling me? Then I would be defending the VA in the discrimination claim. But the grievance process is a process that Congress decided should be excluded or not available to certain types of employees raising certain types of claims. And it did that in this statute? Yes. And you say that is absolutely clear. There's no question of interpretation involved. I don't think there is any question at all that it is broadly described. Is it that Congress intended to exclude VA doctors from the same kind of remedies that may be available for everybody else under Title VII? Doctors, nurses, technicians, everybody else. The answer is yes. The Title 38 medical professionals have been carved out as a special category of employees who must proceed if they have a generalized grievance, they must proceed to the D.C. Circuit Court of Appeals. They don't have the option of, after the FLRA, of going to whatever circuit court of appeals they choose. And there's a separate carve-out for certain types of grievance. What is the D.C. Circuit Court of Appeals going to say? What is it going to say? And based on what? The D.C. Circuit Court of Appeals, if it had this case in front of it, after the arbitration process. Let's assume that there was, in fact, discrimination here. Okay? Assume that. I don't know whether there was or not. But assume that there was discrimination. What is the D.C. Circuit going to say? They're going to remand it back for arbitration of the merits of the grievance. How would it decide that? Because it will decide that the grievance itself, in fact, or that the 7422D determination was improper. And the 7422D determination is made by one side alone? Yes. In a record built by one side alone? Yes. And nobody can mess with that. And they can put in any damn thing they want. And Dr. Savlov could present whatever materials he wished. Where? Where? In the arbitration.   What happens, Your Honor, is that the law is not going to be able to do that. Oh, you don't understand. You're saying in the arbitration. There is no arbitration. But there's a motion to dismiss the arbitration based on the 7422D determination. Dr. Savlov's job is to oppose that dismissal on the grounds that the 7422D determination was improper for whatever reasons, to establish a factual record. Look, the arbitrator is a coward, all right? Okay. And he says, what the hell am I getting involved with this for? The easy way out is to dismiss it. I don't want to make a record at all. Well, it isn't a question of making a record. Dr. Savlov can make the record that he wishes. Where? The record is there before the arbitrator. When should he have done that? Let me understand. Are you going to have a right to cross-examine anything he says also in this opportunity? Let me answer that question first. Dr. Savlov acquiesced in the dismissal of the arbitration and made no presentation in opposition to it. Because he was trying to get somehow a resolution of the discrimination claim. And the avenue that was available to him, that was always available to him, was to proceed through the unique remedy and unique mechanism that's available to all discrimination claimants, namely to file an informal complaint, have it investigated, file a formal complaint. That's the EEOC way. That's correct. In other words, why don't you turn around and tell the union representative right now that the VA has determined, since they have this power, that all collective bargaining agreements with medical professionals are junk. We can do what we damn well please. Well, I don't think they can do what they damn well please. They have to have a legitimate basis for the determination that's made. And that legitimate basis, that evaluation of the legitimate basis by who, whom, by the person designated by Congress to make that determination. And I would hasten to add that the district court in this case determined that that assessment and that determination was appropriate and consistent with the statutory authority. Now, it's our view that notwithstanding the fact that it made that determination, it had no jurisdiction to do so. And so our ---- Okay. Let me just try to understand one more thing. Your position here is that what this doctor should have done in the arbitration, when you took the position that it had to be dismissed because it involved something that Congress had taken out of the jurisdiction of the arbitrator, that this doctor should have said, I'm going to make an offer of proof of all the things, even if you ---- assuming you have jurisdiction, that I would put on. And then you, since you say there's no jurisdiction, say, oh, well, that's it. You know, you could do that. And then it goes up, in your view, to the D.C. Circuit on a review of what? First to the FLRA and then to the D.C. Circuit.  Yeah. And the FLRA says what? The FLRA ---- You're going to tell the FLRA to say what? The FLRA would be affirming the dismissal of the arbitration. Because they didn't have any jurisdiction to look at that evidence. Then it goes up to the D.C. Circuit. And the D.C. Circuit says, in your view ---- What does it say? It says either that the arbitrator had no jurisdiction and the arbitration was properly dismissed because, in fact, the determination made under 7422d by the VA was neither arbitrary nor capricious, but was rather consistent with the statutory authority to make that determination, or that it was not. It had a ---- it ruled as a matter of law. There was no jurisdiction. It ruled for you, I take it. So how is this a question of it being arbitrary or capricious or supported by the other? The D.C. Circuit would then either affirm the FLRA's dismissal of the arbitration or it would remand it back for arbitration on the merits of the discrimination claim. On what basis? On the basis that the determination that was made by the VA was not compatible with the statutory authority to make the determination. In other words, you want the arbitration to occur on a half-hearted record by the court of appeals. No. It would be made based on whatever record. No, no, no. Listen to me, would you please? The court of appeals says, oops, this is an arbitrary and capricious determination. I'm sending it back or we're sending it back to the arbitrator. Yes. How many arbitrators do you think are going to say, oh, well, I have looked at this and I disagree with the court of appeals? How many would think this is the law of the case? I would agree that the arbitrator would then take some cues from the processing of the case and make a determination based on the merits of the claim. Okay. But you already lost the merits. You've lost the merits. Once it's arbitrary, you've lost. And that's the appropriate processing of that type of determination. And the court of appeals is the one doing the determination of whether it's arbitrary or not on a half-baked record. That's what you're looking for, according to your idea. I'm not sure I understand the idea that it's a half-baked record. The record consists of whatever the parties choose to present. And you're saying you should put in evidence, too, and then it goes up. Of course. So therefore, the arbitrator has the right to consider and make a decision. And ultimately, it goes to the D.C. Circuit based on the record before in the arbitration and before the or the end. Yes. And if the circuit has a concern about the adequacy of the record, they can be sent back to supplement the record. But the record would be to say that you're waiving this jurisdiction a whole bit. So therefore, there is jurisdiction. There is jurisdiction, and they can have the hearing. If the 7422 determination is reversed, overruled by the appropriate court, then it is eliminated. No. No, this is at the outset. In order to get it reversed, you have to get a record made. You're saying, okay, they can make the record. Correct. So you have a hearing, right? You have whatever is necessary to establish a record, correct. Oh, boy. I didn't get past my first page, but I hope that's it. But you've more than used your time. We've helped you. I don't know if helped is the right verb, but we've said you've used your time anyway. We helped you use it. We didn't help you perhaps in advance. We've given your opposing counsel quite a hard time, but I want to propose a question to you that maybe is not as favorable to your side. Why isn't it possible that what Congress has said in this whole series of statutes is for most federal employees who have a discrimination claim, they have two routes that they can follow if they're covered by a collective bargaining agreement. One is to grieve it. One is to go to the EEOC under the statutory procedures. But for this class of employees, their sole remedy is going to be under the EEOC for whatever policy reasons they've chosen to carve out for medical professionals at the VA. If that's Congress's decision, what's wrong with that? Well, there's nothing wrong if that was Congress's decision. Okay. So if we were to read the statutes that way, if, and I understand you don't concede that, it wouldn't be so bizarre or irrational that Congress couldn't possibly have meant that. I don't want to scrub any level of rationality to Congress. But that's a possible thing for Congress to have decided. For whatever reason, that collective bargaining, grievances, arbitration is not a good place to deal with the discrimination issues of these medical professionals. We're going to let the EEOC do that, and you can go to court over there, and all that can be dealt with. Elective bargaining agreements from the Federal sector are congressional granted, period. No question about that. I just want to clear up, because I think there, respectfully, I would say I think there's a confusion of sort of, like, the merits and sort of the jurisdictional argument on 7422d, and I just want to make that clear. In this case, when the undersecretary issued his 7422d ruling, 7422d, by its term, says, this shall not be reviewed by collective bargaining. Arbitration is a collective bargaining device. It also may not be reviewed by any agency. So it can't be reviewed by the FLRA, because 7422e does not discuss 7422d determinations, but discusses matters under 7123 of Title V, which are FLRA decisions. And as we've explained in our brief, the development of these two subsections occurs separately. The option that the union had was to ask the arbitrator, dismiss without prejudice, let's get a ruling from the Federal courts, and that's what we did. And their argument is that your option was to go to the EEOC and follow that through as your sole means to pursue a discrimination complaint and have it fully resolved with hearings, trials, and anything that you need. And I respectfully say that we disagree with that. We don't think that 7422 is expansive. And if I can build on that for a second, remember the origin of 7422 was from a D.C. Circuit decision called Colorado Nurses. And then D.C. And the D.C. Circuit and Colorado Nurses said there's no collective bargaining rights for medical professionals. Again, it was contrary to the thoughts of various parties, but that was the ruling. Congress enacted 7422 in response to the Colorado Nurses decision. And it was clear that they thought there were some things that ought to be off-limits from collective bargaining, and grievances. They specifically mentioned grievances so that even if the section of the collective bargaining agreement doesn't relate to patient care, if the grievance implicates it, it's pretty broad language. I need to answer that question. You may, but I want to ask you a follow-up. Okay. There are exclusions to VA medical professionals not applicable to Federal workers in general. However, the general proposition is to restore or provide, depending on one's point of view, collective bargaining or grievance rights. And the 7422B and D exclusions are exceptions to that general rule. And we would submit that the language of this exclusion is so broad, if it arises, touches, covers concerns. I mean, there's an effort to make that a pretty airtight box, that if it has to look at patient care issues, it isn't going to be done through the collective bargaining process, period, including the grievance process. And were that as broad as the Court is now suggesting, then there would have been no reason for 7422 at all. The exception would envelop the general rule. The general rule --- Yes, but what -- go ahead. No. I think I finished my point. Well, the problem I've got is, with your position, is that I don't hear any really very satisfactory definition of what that exclusion is. We describe it in our brief. It's defined by 7422C. Well, that's just --- But again, I --- What does it help me in putting it into particular circumstances? Language is broad, you say it's not as broad as they argue it. I think, and we do suggest this in our principal brief, I couldn't suggest the page. But we say the mode of analysis for this that we propose is, you look at the grievance or proposal, in this case a bargaining proposal, because this goes to bargaining to, you look at the grievance. You determine what the grievance would --- what would happen if the grievance were sustained or the bargaining proposal were adopted. And if that may -- if that allows for the maintenance of VA direct patient care clinical competence considerations, then the grievance can go forward. I think that is a more reasonable reading of the statute than the one that we submit where the exclusions envelop the general rule. Give me just one more example of something that you say is clearly within that exception. Of clearly within the patient --- I'll use what Congress used in the House report. What care shall be provided to patients, what prescriptions, what issues like that. That was one that was clearly stated in the House report. How we are going to treat patients, what doctors should do. So it's limited to whether or not they think that a doctor did something wrong? It is. The exclusion by its terms goes to the issues of how care is provided or the competence or the clinical competence of a medical professional. So if the VA says to your client, I know this isn't exactly your case, if the VA says, Congress talked about prescriptions, we think you've been prescribing, overprescribing to patients and that this is potentially dangerous to patients. And so we're taking away your privileges or we're cutting back your hours or we're doing something bad to you. And your client says, oh, no, that's just an excuse. They're doing it because I'm old, female, et cetera. And so my grievance says they're doing it because I'm old, female, et cetera. But the real question is for the arbitrator, was it because a person was overprescribing medication? How does that not implicate? I don't think that's the issue for the arbitrator. I think the issue for the arbitrator is the motives of the VA. But how can you determine those motives unless you can determine whether the reason given is true? I think it's a credibility issue. And just as a EEOC judge does credibility issues, or a district court judge in a discrimination suit does credibility issues. And again, credibility doesn't mean it's not arbitrable. Oh, I don't think that. Oh, I don't think that at all. I think if a doctor said, I'm a professional. I have the right to determine what care I provide this way or that. And the hospital says, no, you don't. I think that's a professional conduct or competence matter. I think that's something where clearly we wouldn't have the right to grieve. So if you cast it in terms of the hospital told me that I should do something that I think in my professional judgment, I shouldn't have been told. So that gives you a King's X just like they would. So if they say this is all about professional competence, all you have to do is say, hey, no, I'm male. And they only treat males that way. Or I'm female. So you have the right then unilaterally to take it out of the exclusion by claiming a motivation that the VA doesn't claim. I mean, it seems like both of you are. But I think there's a difference in positions, if I may. The difference in position is we have to prevail in an arbitration. We have to win the case. It's not enough just to vote. The question is whether it goes to arbitration. That's the whole point. Congress says don't bring a grievance if it's not. But you see, if it's anything, if we're wrong in our premises, we will lose the arbitration. Here, we don't even go in the first place. And I would probably say with all respect to the government, the government can probably afford arbitration a little bit more than Federal Employee Unions. So I think that in itself is also an impediment. So I don't think we're on equal footing, which I think is an implication of the thought is the whole notion that we just flip-flop the question. We have to prevail. Sotomayor, if you characterize the dispute as one involving discrimination, and it turns out that it's really a question of standards of patient care, and you are not doing something right, either you've slipped or you're – because you've aged or whatever, then you lose on the merits. You betcha. But that depends solely on how you cast the case. We cast the proof. And in order to win, you have to do it. You have to do it. You have to make the proof. Okay. I don't think we're going to get much farther this morning, so thank you. Interesting arguments. Interesting case. The case just argued is submitted for decision. And that
judges: Schroeder, Graber, Duffy